**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Lon Thomas,<br><br>             Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>             Defendant. | No. CV-20-01787-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Christopher Lon Thomas's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial and an Opening Brief (Doc. 16, "Pl. Br."). Defendant SSA Commissioner submitted a Response Brief (Doc. 20, "Def. Br."), and Plaintiff filed a Reply Brief (Doc. 26, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R.") and will affirm the Administrative Law Judge's ("ALJ") decision.

**I.     BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on May 9, 2017 for a period of disability beginning on May 1, 2017. (R. at 26.) His claim was initially denied on August 16, 2017, and again upon reconsideration on November 2, 2017. (R. at 26.) Plaintiff appeared before the ALJ for a hearing regarding his claim on September 17, 2019, which the ALJ denied on October 11, 2019. (R. at 26, 45.) On July 28, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as

the agency's final decision. (R. at 1–3.)

The ALJ reviewed the entire record, including Plaintiff's medical records, Plaintiff's own testimony, and the testimony of a vocational expert. (R. 28–45.) Upon considering the medical records and opinions, the ALJ evaluated the Plaintiff's disability based on the following severe impairments: degenerative disc disease of the cervical spine status-post discectomy and neural decompression, degenerative joint disease of the left knee, major depressive disorder, and unspecified anxiety disorder with agoraphobia. (R. at 28.)

At step three of the five-step sequential analysis, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 30.) The ALJ then calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except he could frequently handle, finger, and feel with the left (non-dominant) upper extremity. He could tolerate moderate intensity noise levels as defined in the *Dictionary of Occupational Titles* and *Selected Characteristics of Occupations*. He could frequently interact with supervisors, coworkers, and the general public.

(R. at 31.) Based on Plaintiff's RFC, age, and education, the ALJ found, at step five, that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (R. at 43.) The ALJ therefore concluded that Plaintiff was not disabled from the alleged disability onset date through the date of the decision. (R. at 45.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, a district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence

that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, a court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The reviewing court should "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Even when the ALJ commits legal error, the reviewing court must uphold the decision where the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. If so, the ALJ continues to step three. There, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where she assesses the claimant's RFC and determines

whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step. There, she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If the claimant can perform such work, he is not disabled. *Id*. If he cannot, he is disabled. *Id.*

### III. DISCUSSION

Plaintiff raises four issues for the Court's consideration. First, Plaintiff argues the ALJ erred by failing to adequately address the medical opinions of two of his doctors and by failing to provide specific and legitimate reasons for not including the limitations identified by those doctors in the RFC finding. (Pl. Br. at 9–15.) Second, Plaintiff contends the ALJ erred by rejecting his symptom testimony without providing clear and convincing reasons. (*Id.* at 15–17.) Third, Plaintiff contends the ALJ erred by rejecting proffered lay witness testimony without providing germane reasons. (*Id.* at 17–18.) Finally, Plaintiff argues the ALJ erred by relying on vocational testimony that was given in response to an incomplete hypothetical question. (*Id.* at 19.)

#### A. Medical Opinions

Plaintiff first argues that the ALJ erred by failing to address the medical opinions of two of Plaintiff's doctors and by failing to provide specific and legitimate reasons for not including the limitations identified by these doctors in the RFC finding. (*Id.* at 9–15.)

Previously, the Ninth Circuit recognized a hierarchy among the sources of medical opinions. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Those who treated a claimant were treating physicians, those who examined but did not treat the claimant were examining physicians, and those who neither examined nor treated the claimant were non-examining physicians. *Id.* This hierarchy was known as the treating physician rule, which generally afforded greater weight to the opinions of treating physicians than the opinions of non-treating physicians. *Orn*, 495 F.3d at 632. Under the rule, where the treating physician's opinion was not contradicted by another doctor, it could be rejected by the agency only

for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. Where, on the other hand, the treating doctor's opinion was contradicted by another doctor, the agency was required to articulate "specific and legitimate reasons," based on substantial evidence, for rejecting the opinion. *Id.*

In March 2017, the SSA amended its regulations to, among other things, abrogate the treating physician rule. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852–57 (Jan. 18, 2017); *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. 18-cv-08317, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020). The new regulations apply to claims, like Plaintiff's, that were filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c.

The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the regulations require the ALJ to assess how persuasive each medical opinion is based on several enumerated factors. *Id.* §§ 404.1520c(a)–(b); 416.920c(a)–(b). Those factors include the opinion's (1) supportability and (2) consistency, the medical source's (3) relationship with the claimant and (4) specialization, and (5) other factors that tend to support or contradict the medical opinion. *Id.* §§ 404.1520c(c), 416.920c(c).

The most important factors in assessing an opinion's persuasiveness are its supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a). The supportability factor focuses on evidence intrinsic to the medical opinion; it requires the adjudicator to look at the objective medical evidence cited and explanations provided by the medical source as support for his or her medical opinion. "The more relevant the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). The consistency factor, on the other hand, looks to evidence extrinsic to the medical opinion. On that factor, the adjudicator compares the opinion to the other evidence in the record.

"The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

### i. Specific and Legitimate Reasons Standard

Plaintiff asserts that the "specific and legitimate reasons" standard survives the new regulations and applies to claims filed after March 27, 2017. (Pl. Br. at 9–11.) Defendant, on the other hand, argues that the new regulations supersede the Ninth Circuit case law requiring the agency to provide "clear and convincing reasons" for rejecting uncontradicted medical opinions and "specific and legitimate reasons" for rejecting contradicted medical opinions. (Def. Br. at 8–9.) The Ninth Circuit has not yet addressed this question, and this Court need not address it here because, even if the standards do apply, the ALJ provided specific and legitimate reasons for rejecting Dr. Johnson's and Dr. Geary's contradicted medical opinions.

### ii. Dr. Johnson's Opinion

In Dr. Johnson's medical source statement given on September 19, 2017 (R. at 1372–73), Dr. Johnson indicated that Plaintiff could sit for only one hour at a time and for only two hours during an eight-hour day, and that he could stand for only thirty minutes at a time and for two hours during an eight-hour day. (R. at 40; *see* R. at 1372.) He further indicated that Plaintiff "could occasionally lift and carry up to five pounds"; "could occasionally bend, squat, crawl, climb, and reach"; and "has significant anxiety and depression which make work for any length of time difficult." (R. at 40; *see* R. at 1372–73.) Finally, he indicated that Plaintiff "would have moderately severe side effects affecting his ability to respond[] to pressures and stress or consistent work effort if he were to take medications. He would also have moderate side effects affecting his ability to pay attention and concentrate or maintain interpersonal relationships if he were to take medications." (R. at 40; *see* R. at 1373.) Almost two years later, on August 9, 2019, Dr. Johnson provided another statement, in which he indicated simply that he continued to agree with his 2017 opinion. (R. at 40; *see* R. at 1844.)

The ALJ determined that Dr. Johnson's medical opinion was unpersuasive, for two reasons. First, the opinion's hypothetical and physical limitations were "more restrictive than the claimant's own descriptions of his daily activities, chores, yard work, driving, sitting, standing, walking, lifting, and carrying." (R. at 40.) Second, Dr. Johnson's 2019 opinion was particularly unpersuasive, because it was given on a "check-box" form and provided only conclusory assertions without objective support.[1] (R. at 40.)

The ALJ did not err in identifying and relying on inconsistencies between Dr. Johnson's opinion and Plaintiff's reported daily activities. While Plaintiff argues that his testimony and the other evidence are consistent with the limitations Dr. Johnson assessed (Pl. Br. at 12), the record belies his argument. As the ALJ noted, record evidence regarding Plaintiff's daily activities indicates that he can perform yard work; cook simple meals; do some limited shopping; sell trading cards on eBay; teach his daughter to cook; tend to his neighbor's yard; perform household chores; paint the garage; and hike, among other things. (R. at 32, 36, 42, 63, 67, 72–73, 87, 1025, 1028, 1036, 1231, 1680, 1687, 1689, 1701, 2121.) These activities are inconsistent with the extreme limitations to which Dr. Johnson opined. *See Pennock v. Comm'r of Soc. Sec. Admin.*, No. 19-cv-08191, 2020 WL 6796768, at * 4 (D. Ariz. Nov. 19, 2020); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Frost v. Berryhill*, 727 F. App'x 291, 294 (9th Cir. 2018). Dr. Johnson's opinion is therefore inconsistent with substantial record evidence, and the ALJ acted reasonably in finding the opinion unpersuasive. *see* 20 C.F.R. § 404.1520c(c)(2) (ALJ will find an opinion more persuasive if it aligns with other record evidence); *id.* § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency."). Similarly, because Dr. Johnson's August 2019 opinion merely affirms his September 2017 opinion, without providing any additional notes, objective medical evidence, or explanations, that opinion is likewise inconsistent with substantial record evidence, and

---

[1] The check-box form indicated only that Dr. Johnson continued to agree with his medical source statement from September 2017. (R. at 40.)

was reasonably rejected by the ALJ.[2]

Further, while Plaintiff contends that Dr. Johnson's treatment notes provided "ample support" for his conclusions (Pl. Br. at 12 (citing R. at 737–65, 989–98, 1361–66)), as Defendant has illustrated, Dr. Johnson's treatment notes were rather inconsistent (Def. Br. at 10). For example, his May 2019 note observed that Plaintiff had normal gait and station, normal alignment and mobility in his back, normal tone and strength, and was able to undergo exercise testing and participate in an exercise program. (R. at 1629.) The same note also denied that Plaintiff had any depression or anxiety, directly contradicting Dr. Johnson's earlier, 2017 opinion. (*Compare* R. at 1629 ("no depression, anxiety, or agitation"), *with* R. at 1373 ("significant anxiety and depression").) Moreover, even if Plaintiff were correct that Dr. Johnson's treatment notes adequately supported his conclusions, supportability is just a single factor—albeit a significant one—that an adjudicator must consider in evaluating the persuasiveness of a medical opinion. It is not alone dispositive. *See* 20 C.F.R. § 404.1520c(c). Thus, the ALJ did not commit reversible error in finding Dr. Johnson's medical opinion unpersuasive due to its inconsistency with the record.

### iii. Dr. Geary's Opinion

During Dr. Geary's psychological assessment of Plaintiff on August 23, 2019, Dr. Geary opined that Plaintiff "avoids places with too much activity as this makes him anxious" (R. at 41; *see* R. at 2117–21), that Plaintiff's "responses to the Beck Depression Inventory suggest severe depression" (R. at 41; *see* R. at 2122), and that Plaintiff

---

[2] In rejecting Dr. Johnson's opinion, the ALJ relied principally on the conclusion that Dr. Johnson's opinion was inconsistent with the other evidence in the record. As discussed above, this is an independently sufficient justification for finding Dr. Johnson's opinion unpersuasive. Thus, although the ALJ also found the August 2019 opinion unpersuasive because of its "use of conclusory statements in a 'check-box' form"—which can in some instances be an improper basis for rejecting a medical opinion, *see, e.g.*, *Garrison*, 759 F.3d at 1014 n.17—this was, at most, harmless error, and is not an appropriate ground for reversing the agency's decision. *See Andrews v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-00610, 2021 WL 4260787, at *5 (D. Ariz. Sept. 20, 2021) ("Plaintiff argues that the ALJ was not permitted to reject Dr. Dirmeyer's opinion simply because it was in check-box form. But the ALJ did not. Instead, the ALJ rejected the opinion because it was inadequately explained, either by the opinion itself, or by the records Dr. Dirmeyer referenced. This was a permissible basis for rejecting the opinion.").

demonstrated "moderately severe limitations in areas of sustained concentration and persistence and social functioning . . . [and] severe limitations to [his] ability to respond to customary work pressures" (R. at 41; *see* R. at 2128–29).

The ALJ concluded that Dr. Geary's opinion, like Dr. Johnson's, was unpersuasive. The ALJ reached this conclusion for two reasons. First, "most of the [Plaintiff's] allegations during the clinical interview were not made to his own treating providers." (R. at 42.) Specifically, the limitations Plaintiff reported to Dr. Geary were inconsistent with those reported to Plaintiff's mental health providers at Banner Behavioral Health. (R. at 42.) Second, "the degree of limitation assessed [by Dr. Geary] is not consistent with [Plaintiff's] activities of daily living as he reported to Dr. Geary." (R. at 42.) The ALJ did not commit reversible error in rejecting Dr. Geary's opinion on these grounds.

The record contains two years of Plaintiff's mental health counseling notes from Banner Health. (R. at 42; *see* R. at 2131–49.) In the counseling notes, Banner Health providers consistently reported that although Plaintiff complained of anxiety and depression, his concentration was intact, he was goal directed and cooperative, and he denied suicidal ideation. (R. at 2131–49.) The ALJ reasonably concluded that these notes were at odds with Dr. Geary's conclusions about Plaintiff's ability to concentrate, respond to work pressures, and function socially. *See* 20 C.F.R. § 404.1520c(c)(2). While Plaintiff now argues he "did not . . . have the opportunity to discuss his mental health symptoms in detail with other providers before he was examined by Dr. Geary" (Pl. Br. at 14), his argument is inconsistent with the record, which includes voluminous evidence regarding Plaintiff's mental health examinations. (R. at 42; *see, e.g.*, R. at 2131–49.)

It was also reasonable for the ALJ to find Dr. Geary's conclusions, like Dr. Johnson's, inconsistent with Plaintiff's reported daily activities. Although Plaintiff informed Dr. Geary that he avoids busy, noisy places because of his anxiety, the record shows that since his alleged onset date, he has traveled through an airport and in an airplane to attend a Pittsburg Steelers game; taken his children to dance lessons, the mall, and the movies; and gone out to eat about once a week. (R. at 72–73, 1036, 1680, 1687, 1689.)

Although Plaintiff contends that these activities were limited in scope and therefore insufficient to negate Dr. Geary's findings, it was reasonable for the ALJ to reach the opposite conclusion.

Thus, substantial evidence supports the ALJ's determination that Dr. Geary's opinion was unpersuasive.

### B.     Plaintiff's Symptom Testimony

Plaintiff also argues that the ALJ erred in rejecting his symptom testimony without providing clear and convincing reasons. (Pl. Br. at 15–17.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ determines whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If so, the ALJ must then evaluate the claimant's testimony in the context of the objective medical evidence and other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3). To prevent the ALJ from "arbitrarily discredit[ing]" the claimant's subjective testimony, *see Pennock*, 2020 WL 6796768, at \*6 (quoting *Thomas*, 278 F.3d at 958), the Ninth Circuit has held that the ALJ may only discredit a claimant's allegations for reasons that are "specific, clear and convincing." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). This is an exacting standard, under which the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

In doing so, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ may consider, for instance, "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). Indeed, "[e]ven where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony

to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or suggest that the claimant's "later claims about the severity of [the] limitations were exaggerated." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). In addition, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see also* 20 C.F.R. § 404.1529(c)(3). While the ALJ may consider that the medical record lacks evidence to support certain symptom testimony, that cannot form the sole basis for discounting the testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Applying the forgoing principles to the instant case, the Court finds that the ALJ did not commit reversible error in discrediting Plaintiff's symptom testimony. Under the first prong, the ALJ made a finding that the medical evidence reflected the presence of degenerative disc disease of the cervical spine, degenerative joint disease of the left knee, major depressive disorder, and unspecified anxiety disorder with agoraphobia (R. at 28), and determined that these "impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms" (R. at 33). Under the second prong, however, the ALJ carefully considered the evidence (R. at 33–42) and determined that "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (R. at 33). The ALJ's decision explains:

> Based on my review of the entire record and the hearing testimony, I conclude the claimant's subjective allegations of debilitating pain and physical/mental limitation precluding all work activity are not supported by the objective evidence. His testimony at the hearing was not generally persuasive or consistent with the objective evidence such as the mild physical examination findings throughout the record. His activities of daily living are not consistent with one who suffers such severe limitations as to preclude all work activity. Finally, some of his alleged impairments have been responsive to treatment and do not impose a disabling degree of limitation.

(R. at 42–43.) Thus, the ALJ provided three principal reasons for rejecting Plaintiff's symptom testimony: (1) the testimony was inconsistent with the mild physical examination findings in the record; (2) the testimony was inconsistent with Plaintiff's activities of daily

living; and (3) Plaintiff's alleged impairments have been responsive to treatment. These reasons were permissibly relied on by the ALJ and are supported by substantial evidence.

In his decision, the ALJ pointed to several activities which undermined the Plaintiff's allegations of the debilitating degree of his physical and mental symptoms. One such activity was Plaintiff's trip to Pittsburgh to watch an NFL game. (R. at 42.) As the ALJ noted: "[Plaintiff's] attendance at a football game and flying is inconsistent with his complaint that noise and people trigger his mental symptoms, even though he did leave early. It is unreasonable to assume that the claimant did not encounter long periods of noise and crowds." (R. at 42.) Additionally, the ALJ determined that some of Plaintiff's daily activities, such as doing housework "obsessively," completing yard work, hiking, and tending to some of his family's finances, undermined his allegations. (R. at 42.) The ALJ also found significant that Plaintiff's "pain while working was triggered by consecutive 12-hour workdays," that his "treatment has been conservative with therapy and medications," and that his "recent mental health records consistently show little problem with concentration." (R. at 42.) Based on these and other discrepancies between Plaintiff's reported symptoms and the record, it was reasonable for the ALJ to conclude that the evidence simply was "not consistent with one who suffers such severe limitations as to preclude all work activity." (R. at 43.) *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[When] a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."). Accordingly, the ALJ's reasons for discrediting Plaintiff's symptom testimony were clear and convincing and supported by substantial evidence.

### C. Lay Witness Testimony

In addition to his own testimony, Plaintiff provided the agency with the testimony of several lay witnesses. Plaintiff's wife, Tracy Thomas ("Mrs. Thomas"), completed a questionnaire regarding Plaintiff's limitations (R. at 256–63) and wrote a letter describing his worsening physical and mental conditions and childhood trauma (R. at 346–48); his

friend, Mandi Monaghan, wrote a letter attesting to his decreased mobility and worsening pain levels over the past several years (R. at 340); his aunt, Maryanne Zahari, wrote a letter describing his mental and physical ailments (R. at 341); his friend and former coworker, Robert Medina, wrote a letter noting his lack of focus, mood swings, irritability, and anxiety near the end of his time at work (R. at 342); and his sister-in-law, Victoria Kendall, wrote a letter describing his worsening anxiety and pain (R. at 343–44).

Plaintiff contends that the ALJ erred in rejecting the testimony of these lay witnesses without providing "germane reasons" for doing so. (Pl. Br. at 17–18.) Defendant argues in response that: (1) the SSA's new regulations supersede the germane reasons standard; and (2) even if the germane reasons standard governs, the Court should still affirm because any error resulting from the ALJ's decision to reject the witnesses' testimony was harmless.

Prior to March 27, 2017, Ninth Circuit case law held that lay testimony was "competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis*, 236 F.3d at 511). Accordingly, lay witness testimony generally could not be "disregarded without comment." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Plaintiff's opening and reply briefs appear to assume that this standard continues to apply to claims filed after March 27, 2017, but do not directly address whether or why that is the case. Defendant's response brief, on the other hand, affirmatively contends, albeit briefly, that the SSA's new regulations supersede Ninth Circuit law on this issue and do not require an ALJ to expressly address nonmedical evidence. (Def. Br. at 19.)

The relevant new regulation reads: "We are not required to articulate how we consider evidence from nonmedical sources using the requirements in paragraphs (a)–(c) in this section." 20 C.F.R. § 404.1520c(d). The Ninth Circuit has not yet addressed the meaning of this provision or whether the germane reasons rule survives its enactment, and

district courts in this Circuit have split on the issue. *Compare, e.g.*, *Kava v. Kijakazi*, Civ. No. 20-cv-00385, 2021 WL 4267505, at *7 (D. Haw. Sept. 20, 2021 ("For cases that . . . were filed on or after March 27, 2017, the regulations no longer require the ALJ to articulate how he or she considered evidence from nonmedical sources."), *and Wendy J.C. v. Saul*, No. 3:19-cv-01434, 2020 WL 6161402, at *12 n.9 (D. Or. Oct. 21, 2020) ("[T]he ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony."), *with Joseph M.R. v. Comm'r of Soc. Sec.*, 3:18-cv-01779, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) ("Although § 404.1520c(d) states the Commissioner is 'not required to articulate how we consider evidence from nonmedical sources' using the same criteria for medical sources, it does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements."). *See also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,850 (Jan. 18, 2017) ("Depending on the unique evidence in each claim, it may be appropriate for an adjudicator to provide written analysis about how he or she considered evidence from nonmedical sources, particularly in claims for child disability."). While Defendant briefly raises this argument, the limited briefing addressed to the issue does not permit the Court to weigh in on the effect of § 404.1520c(d).

In any case, the Court does not need to address the issue in this case because, although the ALJ's decision did not expressly discuss the lay witness testimony, such omission was harmless. "Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Caleb H. v. Saul*, No. 4:20-cv-05006, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020); *see also Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). As in the cited cases, the lay witness testimony in this case merely

repeats Plaintiff's own testimony regarding his physical and mental ailments, limitations, childhood trauma, and work history. Because the ALJ gave clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony, therefore, such reasons are likewise sufficient to discredit the lay witnesses' testimony. Thus, any error attributable to the ALJ failing to expressly address such testimony is harmless. *See Treichler*, 775 F.3d at 1099 ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." (citations and internal quotation marks omitted)).

### D. Vocational Testimony

Finally, Plaintiff contends that the ALJ erred by relying on vocational testimony that was given in response to an incomplete hypothetical question. (Pl. Br. at 19.) As described above, once a claimant shows that he cannot perform past relevant work, the burden shifts to the Commissioner to show that the claimant can engage in other substantial gainful activity. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The Commissioner "can meet this burden by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations." *Id.* (citing *Magallanes v. Brown*, 881 F.2d 747, 756 (9th Cir. 1989)). Such a hypothetical must be based on medical assumptions that are supported by substantial evidence in the record, *Roberts*, 66 F.3d at 184. A hypothetical "that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690.

Here, Plaintiff contends that the ALJ should have included additional limitations in his hypothetical to the vocational expert based on the Plaintiff's own testimony, the lay witness testimony, and Dr. Johnson's and Dr. Geary's opinions. (Pl. Br. 19.) But the Ninth Circuit has held that an ALJ may properly limit a hypothetical to only those restrictions that are supported by substantial evidence. *See Magallanes*, 881 F.2d at 756–57. As explained above, the additional limitations expressed in Dr. Johnson's and Dr. Geary's medical opinions, Plaintiff's testimony, and the lay witnesses' testimony, were not supported by substantial evidence and, accordingly, the ALJ was under no obligation to

accept and include them in the hypothetical. Thus, the ALJ did not commit reversible error in declining to do so.

## IV. CONCLUSION

For the forgoing reasons,

**IT IS ORDERED** affirming the October 11, 2019 decision of the Administrative Law Judge (R. at 23–45), as upheld by the Appeals Council on July 28, 2020 (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 1st day of February, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge